***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times.
3. Allied Claims Administration, Inc. was the third party administrator for defendant-employer at all relevant times.
4. Plaintiff sustained a crush injury to her lower right leg when her foot was run over by a forklift on or about February 13, 1996.
5. Plaintiff's claim was found to be compensable by an Opinion and Award of Deputy Commissioner Mary Moore Hoag filed May 19, 1999.
6. The issues to be determined by the Commission are as follows:
 a) Whether plaintiff's request for a spinal cord stimulator is reasonably necessary to effect a cure, give relief or lessen the period of disability for the February 13, 1996 injury; and
 b) Is plaintiff entitled to an award of attorney fees due to the unwarranted refusal of defendant to provide medical treatment.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff suffered a compensable crush injury to her right leg. Plaintiff was ultimately diagnosed with reflex sympathetic dystrophy, or complex regional pain syndrome, and during the past 5 ½ years has been treated extensively with physical therapy, narcotic medications, and lumbar sympathetic blocks, all without success. By Opinion and Award entered by Deputy Commissioner Mary Moore Hoag on May 19, 1999, Dr. Richard Rauck, then at North Carolina Baptist Hospital, was ordered to be plaintiff's treating physician. Deputy Commissioner Hoag found as a fact that Dr. Rauck was a noted authority on complex regional pain syndrome who had a special interest in this area, authored several articles and presented papers to various medical societies on the topic, participated in and moderated seminars and served on a worldwide panel of 26 physicians that examined the diagnosis of the disease. Dr. Rauck has continued to treat plaintiff since November 11, 1997.
2. On December 31, 1997 plaintiff was evaluated for a surgically implanted spinal cord stimulator, but was found not to fit the psychological profile recommended for a spinal cord stimulator due to her reluctance to undergo the surgery and the financial expense. At that time her claim for workers' compensation benefits had been denied by defendant.
3. On April 11, 2000 plaintiff was seen by Dr. T. Kern Carlton, Medical Director of the Rehab Center in Charlotte, for an IME requested by the carrier. Dr. Carlton concluded: "If this (MRI) is negative for any treatable lesion, as I would expect, then it would certainly be a reasonable option to have a trial of a spinal cord stimulator." The MRI was in fact negative as expected.
4. On July 3, 2000 Dr. Rauck likewise recommended a spinal cord stimulator trial. Plaintiff was cleared psychologically by Dr. Tim Webster and she consented to the procedure.
5. Defendant refused to authorize a spinal cord stimulator trial, even though it was recommended by the treating physician, Dr. Rauck, and the IME physician designated by the carrier, Dr. Carlton, and requested by plaintiff. Following this refusal Dr. Rauck wrote the senior nurse case manager for defendant on October 12, 2000 and asked that the following be maintained in plaintiff's record:
 "I feel that it is medically indicated for her to undergo spinal cord stimulation. She has been cleared by our psychologist. She also was sent (I presume by the carrier) to Charlotte, to Dr. Kern Carlton, for a second opinion, who felt it was reasonable for a spinal cord stimulator trial.
 I feel that adjusters, who are not treating patients, to make this type of decision is unwarranted and reflects poor medical judgment and poor judgment on the company's behalf."
6. Defendant's continued refusal to authorize a spinal cord stimulator trial resulted in litigation of the issue before the Commission.
7. At the Deputy Commissioner hearing in this matter, plaintiff testified that when the spinal cord stimulator was first suggested in 1997 she was reluctant to have it due to fear of the surgery and the financial expense, since she was not receiving worker's compensation benefits at the time. However, since that time the conservative treatment plan followed over the past four years has not helped plaintiff's pain and she continues to be unable to work, drive a car, or perform ordinary household chores. She ambulates with the assistance of a cane. Plaintiff is also concerned that she is on daily doses of the narcotic medication Methodone and fears that the continued use of Methodone may lead to heart problems due to her high blood pressure and heart rate. Furthermore, plaintiff is very willing to undergo the surgical implant procedure to hopefully relieve her pain better than medications and nerve blocks. Plaintiff has discussed the procedure with Dr. Rauck and viewed the patient video describing the likely benefits and risks of the spinal cord stimulator and wishes to proceed.
8. Dr. Rauck has treated plaintiff for four years and has seen her approximately 20 times. Dr. Rauck is of the opinion that plaintiff is presently disabled from work and, given the past course of treatment of plaintiff, the spinal cord stimulator is the best medically indicated treatment plan. Increasing doses of narcotic medications tend to create a drug dependency which will render plaintiff more dysfunctional. While other treatment alternatives may be available and may not constitute departures from the appropriate standard of care, Dr. Rauck is of the opinion that the spinal cord stimulator is the most appropriate treatment choice and the one that has a good chance to make plaintiff more functional. The trial spinal cord stimulator would likely cost between $3,000.00 and $4,000.00.
9. Dr. Carlton is of the opinion that a spinal cord stimulator trial is an appropriate treatment alternative for plaintiff. He reviewed the psychological assessment by Dr. Webster and did not find anything in the psychological evaluation that would contraindicate a spinal cord stimulator.
10. On August 6, 2001 the stimulator was approved by Special Deputy Commissioner Gina Cammarano but defendant continued to refuse to authorize trial of the stimulator. After this case was set for hearing before the Deputy Commissioner and approximately five weeks before the hearing, defendant obtained an "Independent Chart Review" by Dr. Gerald M. Aronoff, a psychiatrist with the North Carolina Pain and Disability Group. Without having seen, spoken to or examined plaintiff, Dr. Aronoff recommended increasing the dosages of medications and a "refresher treatment program in a functional restoration pain rehabilitation clinic," but would not recommend moving forward with spinal cord stimulation. The Commission gives greater weight to the medical opinions of Drs. Rauck and Carlton than to Dr. Aronoff.
11. The medical treatment plan proposed by Dr. Rauck consisting of a spinal cord stimulator trial and, if that is successful, a surgically implanted spinal cord stimulator, is reasonably required to effect a cure, give relief, or lessen plaintiff's period of disability.
12. The hearing in this matter was defended by defendant without reasonable grounds, and the refusal to authorize a spinal cord stimulator as advocated by the treating physician and defendant's own IME physician constitutes stubborn, unfounded litigiousness and an unreasonable denial of medical treatment.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to have defendant provide a spinal cord stimulator since it is reasonably required to effect a cure, give relief, or lessen her period of disability. N.C. Gen. Stat. § 97-25.
2. When defendant initially denied the medical treatment, it had no medical information to support its position. Defendant exercised its right to a second opinion on the issue and continued without any medical support to deny treatment after its own IME physician also recommended a trial of the spinal cord stimulator. Therefore, plaintiff is entitled to an award of attorney fees because defendant's actions were based upon stubborn, unfounded litigiousness. N.C. Gen. Stat. § 97-88.1; Sparksv. Mountain Breeze Restaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. It is hereby ordered that plaintiff's Motion for Approval of Medical Treatment is granted.
2. It is hereby ordered that defendant shall authorize and pay for all treatment proposed by Dr. Rauck to the extent it is reasonably required to effect a cure, give relief, or lessen plaintiff's disability, including the spinal stimulator trial and the surgical implantation of a spinal cord stimulator.
3. It is further ordered that defendant shall pay directly to plaintiff's attorney reasonable attorney fees and litigation expenses upon completion by plaintiff's attorney of a Petition and Affidavit for Fees and submission to the Commission for determination of a reasonable fee for his services in this matter.
4. Defendant shall pay the costs of this action.
This the ___ day of July 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN